## WANDO PHOSPHATE COMPANY v. ROSENBERG.

1. Statutes authorizing attachments are to be strictly construed, and all their requirements must be fulfilled. An attachment should not be issued except upon affidavits containing an averment of facts which, if true, furnish *prima facie* evidence of the statutory grounds ; allegations founded upon information and belief are not sufficient.
2. Conducting a large business, selling some goods below cost, extensively advertising, and producing in the community an impression that a crash is approaching, are not sufficient to show *prima facie* that defendant is disposing, or is about to dispose, of his property with intent to defraud his creditors.
   Only result concurred in.

Before HUDSON, J., Darlington, January, 1889.

This was an action by the Wando Phosphate Company against Joseph Rosenberg, commenced March 12, 1888. A warrant of attachment was issued by Judge Hudson pending suit, on December 12, 1888, upon the following affidavits :

Personally appeared F. B. Hacker, who, being duly sworn, says, that he is president of the Wando Phosphate Company, plaintiffs in the above action. That the plaintiffs have a cause of action against the defendant, Joseph Rosenberg, the particulars of which are fully stated in the verified complaint in said action, a copy of which is hereto attached, and that the said defendant is now due the plaintiffs on said cause of action, as set forth in the said complaint, the sum of $824.42, together with interest thereon from March 3d, 1888. That, upon the facts stated in this affidavit, and from information received from W. M. Huggins, John A. Blackwell, whose affidavits, as to the said information, are hereto attached, deponent has reason to believe, and does believe, that the said defendant, J. Rosenberg, has disposed of or secreted portions of his property, and is about to dispose of or secrete other portions of his property, with intent to defraud plaintiffs and his other creditors of their just demands against him. Deponent further says, that when the said Rosen-

berg applied to the plaintiffs, as stated in the said complaint, to purchase the said fertilizers, deponent conducted the interview with him, and the treasurer of the plaintiffs, John W. Robinson, was within hearing and did hear what was said. Deponent stated to said Rosenberg that the supply of fertilizers on hand was small, and they could only sell to him for cash. That the terms (for cash) for what said Rosenberg wanted were then stated, whereupon said Rosenberg left, saying he would return that evening and say what he would do. He returned the next day and said, in effect, that he would take the goods upon the terms proposed. Mr. Robinson was again within hearing and heard Rosenberg say that he would remit promptly upon his return home. On February 21st, 1888, the invoice of the goods sold was mailed to him, having on it the memoranda: "Terms cash—please remit," and with it a letter which said: "We mailed you this morning invoice for goods amounting to $824.42. Kindly remit the amount at once as per agreement." Receiving no reply, a letter was mailed him on March 2d, 1888, to the same effect. On March 3d, he wrote plaintiffs that he had bought the guano payable November 15th. On March 5th, plaintiffs telegraphed: "You must not use our goods unless you pay cash for them immediately." Receiving no reply, their salesman was sent up and found that Rosenberg had received the goods and was not willing to do more than give a note payable in the fall, with interest.

(Signed)        F. B. HACKER.

Sworn to before me this November 24th, 1888.

[SEAL.]        GEO. W. BROWN, *Not. Pub. S. C.*

J. C. Budds, being duly sworn, says that he is the manager of Dunn's Mercantile Agency in this city. He knows Joseph Rosenberg. On November 10 instant he had an interview with Mr. Rosenberg, in which the latter said, among other things, that he had purchased guano of the Wando Phosphate Company, the purchase money of which was payable November 1, 1888, but they claimed that he had purchased it for cash, and had on this ground brought suit against him; and he also said that he would not pay the company until judgment was obtained against him, and that when judgment was obtained he would settle; that he was well able to pay, but as suit had been brought he intended to make the company wait; that he owned real estate in Darlington, unincumbered, and had all his stock there; that he bought heavily in July at the North, and that trade was now dull.

J. C. BUDDS.

Sworn to 23d November, 1888.

Personally appeared W. M. Huggins, who, being duly sworn, says that some time before the 17th of this month his attention having been called to an advertisement of J. Rosenberg, of Darlington, that he was selling flour very cheap, deponent wrote to ask the price, and was informed in reply that he could have good family flour at $5.75 per barrel. Regarding this as very low, and many of deponent's neighbors wishing to lay in a supply at such price, deponent came down on the said 17th day of October, prepared to purchase twenty-five barrels at least, but found that the said Rosenberg had but eleven barrels of the better class of flour, and deponent bought the lot of eleven barrels at $5.75 per barrel. The brand of the flour purchased was "Michigan Straight." Rosenberg gave as a reason for selling so cheaply that he had bought before the rise.

                                        W. M. HUGGINS.
     Sworn to 24th November, 1888.

Personally appeared John A. Blackwell, who, being duly sworn, says that he is a merchant, and as such has been doing business in the town of Darlington for the past four years; that he knows Joseph Rosenberg, who is also a merchant doing business in said town for a longer period than deponent, first as partner of one Philip Kalmus, and for the last two years alone; that said Rosenberg has had this fall a stock of goods on hand very greatly in excess of any stock that deponent has hitherto known him to have, and has distributed. and is selling the same from five different stores; that deponent knows him to have sold on several occasions goods below cost, and is informed and believes, that said Rosenberg so disposes of his goods, as a general rule, except to people of the town, and those likely to make the same public; that his stores are frequented, and he must have taken in since the commencement of the fall season, and still must be taking in, a large amount of cash daily, but that meanwhile his notes are going to protest, and he is refusing to pay, with rare, if any, exceptions, the demands made upon him. His salesmen have been numerous and his advertisements have been profuse, extraordinary, and expensive. The general impression of this community is that he is putting his cash beyond the reach of his creditors. and preparing, when pressed to the wall, to turn over to his creditors the beggarly remnant of his property that remains unsold or uncollected. Several failures of this character have taken place in the community since deponent has been here when they were preceded by these same symptons and indications that now attend the career of Joseph Rosenberg. No sane man in the community has any doubt that the end is near, and

that the result will be as above predicted. Deponent has seen the affidavit of W. M. Huggins, and is satisfied that at no period of this year, even before the rise, could good flour, branded Michigan Straight, have been purchased for delivery here for less than $5.75 per barrel.

JNO. A. BLACKWELL.

Sworn to 24th November, 1888.

Personally comes before me R. W. Boyd, who, being duly sworn, says that he is one of the attorneys for plaintiffs in the above stated action ; that since the 15th of November instant he demanded of the defendant, Joseph Rosenberg, payment of plaintiffs' claim, saying that the time had passed at which he himself contended that it was payable, and Rosenberg said he could not pay, for the reason that he had no money with which to pay it.

R. W. BOYD.

Sworn to 24th November, 1888.

Personally appeared before me Francis B. Hacker, who, on oath, says that this paper hereto annexed is a correct copy of a statement made to R. G. Dun & Co.'s commercial agency by Joseph Rosenberg, of Darlington County. That the original statement (in the handwriting of the said Rosenberg, as this deponent believes) is now in his possession, having been furnished to him at his request by R. G. Dun & Co. upon his application. That the original is not sent herewith because it was loaned to deponent upon the distinct understanding that he would not permit it to go out of his possession.

. F. B. HACKER.

Sworn to 30th November, 1888.

[COPY.]

STATEMENT AS A BASIS FOR CREDIT.

Statement to Messrs. R. G. Dun & Co. of the financial condition of Joseph Rosenberg, of Darlington, County of Darlington, State of S. C., on July 25th, 1888 :

*Assets.*—July 1st, 1888.

| | |
|---|---:|
| Merchandise on hand and in transit, | $ 6,500 00 |
| Outstandings, including bills receiv., open accounts, &c., at their realizable value, | 21,000 00 |
| Amount of notes considered good, | 4,250 00 |
| Cash on hand and in bank, | 100 00 |
| Mortgages, | 2,000 00 |
| | $33,850 00 |

For money advanced secured by mortgages,                22,000 00

                                                      $55,850 00
    Insurance on stock, $5,000.

### *Liabilities.*

To merchandise on open account, not due, $ 7,000 00
Due commission house for advances,        15,000 00
Loans from bank,                           2,000 00 24,000 00

    Surplus in business,                           $31,850 00

    Yearly extent of business, about $50,000.
    Eight plantations, about 800 acres land, $6,000 or 8,000.
    Three lots in town, $500 each, $1,500.
    No encumbrances on real estate.
    Total worth in and out of business, $35 to $38,000.
       [Signed]          JOSEPH ROSENBERG.
References—Bank of Darlington.
              H. H. Claussen & Co., of Charleston.
              J. Whitehill & Co., Baltimore.
              J. S. Pinkussohn & Bros., Charleston, S. C.
              Daniel Miller & Co., Baltimore.
              Meinhard Bros. & Co., Savannah, Ga.

    Personally appears Geo. W. Brown, who, on oath, says, that he has resided at Darlington C. H., in said county and State, for the past ten years, and for the last eight years has been engaged in the practice of law. That as attorney at law, deponent has at all times paid close attention to the extent and character of the business of the various merchants of the said town. Some eight or ten years ago one Joseph Rosenberg came to said town and entered the store of his brother-in-law, one Philip Kalmus, first as a clerk, and afterwards a partner under the firm name of Kalmus & Rosenberg. That the business appeared to be prosperous, but at no time did it appear to deponent to exceed $15,000 or $20,000 per year. About the beginning of the year 1887, the said Philip Kalmus sold out his interest in the said business and removed to the North; that the said Rosenberg, in his own name, has since carried on the business, but the general impression of the community was that he simply remained to close up the unsettled and uncollected assets of Kalmus & Rosenberg. Deponent knows that during 1887 many of the securities held by the said Kalmus & Rosenberg were rigorously enforced,

and the said Rosenberg informed deponent that he was generally so enforcing his securities. That owing to this policy, the business of the said Rosenberg could not have been, nor did it have the appearance of being, as large as had been the business of the said Kalmus & Rosenberg; that deponent finds upon record in the office of the register of mesne conveyance of said county, the record of papers of dates February 2nd and 12th, 1887, purporting to be conveyances by the said P. Kalmus to the said J. Rosenberg of his, the said Kalmus', interest in the business of the said Kalmus & Rosenberg, and apparently of all property held by the said Kalmus in said county, the expressed consideration therein being $5,000. Deponent also finds on record that there was, in the early part of this year, real estate held by the said Rosenberg (nearly the whole of which had been conveyed to him by the said Kalmus), of lands in various tracts, about $869\frac{1}{4}$ acres, and of town lots, seven in number. He finds, also, that in January and March, 1888, there was conveyed away by the said Rosenberg of the said lands 493 acres, and of the said town lots one, the same being the store house lot in which the business of Kalmus & Rosenberg had been conducted. That of the six town lots appearing to be unsold, two were purchased in February, 1886, for $260, and four in September, 1887, for $650; that the said six lots are open, unimproved lots, and consist of 65–100 acres each; that the said Rosenberg is now doing business in several store houses, none of which are owned by him; that the amount of goods handled and sold by the said Rosenberg during the present season has been so extraordinarily large as to excite the surprise and attention of the whole community; that there are a large number of unpaid claims in the hands of attorneys at Darlington against said Rosenberg, and they are accumulating daily. That, with very few exceptions, he is refusing payment of demands made upon him by his creditors.

                                        GEO. W. BROWN.

Sworn to December 3rd, 1888.

*Messrs. Ward & Woods*, for appellant.

*Messrs. Boyd & Brown*, contra.

July 9, 1889. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. An attachment was granted by his honor, Judge Hudson, in the action below upon certain affidavits submitted by the plaintiff, respondent. A motion was afterwards made by the defendant, appellant, to dissolve or dis-

charge said attachment, and affidavits were submitted both by respondent and appellant. This motion was refused by his honor, Judge Hudson, who heard the same. The defendant has appealed on the ground that the attachment was both irregularly and improvidently issued, and also upon the further ground that his honor erred in considering the conduct of the defendant subsequent to the issue of the attachment in determining the question of irregularity, &c., on the motion to discharge.

First, should the attachment have been discharged because of irregularity? This question calls for an examination of the affidavits upon which it was issued, and also for a statement of the legal principles which control in such cases. Attachments are statutory proceedings, and they are intended to summarily dispossess a party of his property, and to hold it subject to the result of an action in progress. And being in direct conflict with that dominion and right which every one has at common law over his own, and which government is constructed to protect, statutes authorizing such proceedings have always been strictly construed, and all of their requirements absolutely demanded to be present. True, they are efficient and useful remedies, and very advantageous to commerce and trade, but still they are harsh and summary, and are only allowed upon the conditions found in the statute, which must be made to appear in the affidavit submitted. This, too, not upon allegations founded upon information and belief and hearsay merely, but upon the averment of facts and occurrences, which, if true, would at least furnish *prima facie* evidence of the existence of the statutory condition upon which the attachment is sought. This is the law in this State, as adjudged in several cases. *Myers* v. *Whiteheart,* 24 S. C., 202; *Smith & Melton* v. *Walker,* 6 *Id.,* 169; *Brown* v. *Morris,* 10 *Id.,* 469; *Claussen* v. *Fultz,* 13 *Id.,* 478; *Ivy* v. *Caston,* 21 *Id.,* 583.

Now, in the action below the attachment was moved on the, ground that the defendant had disposed of, or had secreted, his property, with intent to defraud his creditors, or was about to dispose of or secrete said property with said intent. These are some of the conditions found in the attachment act, and if the affidavits submitted contain an averment of facts which would

*prima facie* sustain these charges, and the existence of which does not depend upon mere information and belief or hearsay, but which are susceptible of proof by competent and sufficient evidence, then the warrant was properly issued, otherwise it was irregularly issued, and should have been discharged.   To be a little more distinct : we mean to say that the affidavit is the primary foundation for the attachment, and it must contain an allegation of the existence of one or more of the conditions prescribed in the attachment act, or of facts from which they may be inferred, resting upon the knowledge of the affiant or of some one else as the source of the information.

Now, the question is, did the affidavits here conform to this principle ?   They were seven in number ; and to be sufficient, it was necessary that they should show a disposition or secreting of property by the defendant, with intent to defraud his creditors, or a purpose to do so.   As to these precise grounds, there is nothing in the affidavit of Hacker, the president of the plaintiff company, except a general charge, founded entirely on his belief based upon information received from others, to wit, from Huggins and Blackwell, whose affidavits accompany his.   Upon examination of these, it will be seen that they are equally deficient with that of Hacker upon the exact points involved.   The only fact stated upon the knowledge of Huggins, is that he bought eleven barrels of flour, at $5.75 per barrel, from defendant of the brand of "Michigan Straight," which he thought was cheap.   He, however, states the reason, given by the defendant, why he could sell at that price, to wit, that he had bought before the rise. Blackwell does not make any statement upon his own knowledge, except that he knew of sales by the defendant on several occasions below cost, and that the defendant was selling goods at five different stores.   The balance of his affidavit is upon information and belief, founded upon hearsay, and stating the general impression of the community as to whether the defendant was doing a safe or a reckless business.   The other affidavits, as it appears to us, altogether fail to touch the main points, to wit, whether the defendant was disposing of or secreting his property, with intent to defraud his creditors, or was about to do so.

If an attachment can issue simply because a merchant is doing

a large business, sometimes selling below cost, and extensively advertising, and perhaps producing the impression in the community that a crash is approaching, but few enterprising merchants would be entirely safe. And yet, when the affidavits here are analyzed, they amount to nothing more than this, and fail entirely to sustain the charge, that defendant was disposing of his. property to defraud his creditors, or was about to· do so. We think, under the authority of our cases cited above, and because of the insufficiency of the affidavits upon which the warrant was issued, the motion of the defendant to discharge the attachment should have been granted. See, particularly, *Myers* v. *Whiteheart*, 24 S. C., 202. Such being our conclusion, it is unnecessary to adjudge the other questions raised in the appeal.

It is the judgment of this court, that the judgment of the Circuit Court be reversed on the ground stated hereinabove, and that the attachment be discharged.

MR. JUSTICE McIVER and MR. JUSTICE McGOWAN concurred in the result.